Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5072 | **DATE** | 3/21/2002 |
| **CASE TITLE** | RADKE vs. TACO BELL CORP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted. All other pending motions are moot. All pending dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 2 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 28 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | CLERK | 3/21/2002 | |
| | | 02 MAR 22 AM 9:06 | date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEBORAH A. RADKE,

    Plaintiff,

v.

TACO BELL CORP.,
    Defendant.

No. 01 C 5072

MAR 2 2 2002

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On March 23, 2001, plaintiff Deborah A. Radke ("Radke") filed a single-count complaint against defendant Tricon Restaurant Services Group, Inc., d/b/a Taco Bell of California, Inc. in the Circuit Court of DuPage County, Illinois. On June 29, 2001, defendant removed the case to this court, and Radke filed an amended complaint naming the proper defendant, Taco Bell Corporation ("Taco Bell"). In the amended complaint, Radke alleges that Taco Bell retaliated against her for filing a workers' compensation claim in violation of Illinois public policy. On January 30, 2002, Taco Bell filed this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Having considered all of the evidence in the record, defendant's motion for summary judgment is GRANTED. This case is dismissed in its entirety with prejudice.

### STATEMENT OF FACTS[1]

Radke started work with Taco Bell as a shift manager in October of 1984. In March 1995,

---

[1] The following facts are undisputed and are taken from the defendant's and plaintiff's submissions pursuant to Local Rules 56.1(a) and (b).

1



Radke was a Restaurant General Manager ("RGM") for two different Taco Bell restaurants, one restaurant in Montgomery, Illinois and another in Aurora, Illinois at the Fox Valley Mall. A RGM is generally required to work a minimum schedule of 10 hours a day, five days a week. Additionally, RGMs spend about 8 hours of a typical 10 hour day on their feet performing the various managerial tasks required in operating a fast-food restaurant. On March 18, 1995, Radke slipped off a stool at work and suffered an injury to her right foot. Radke reported her accident to Taco Bell and was later diagnosed as having "bilateral fascitis" in her right foot.

After the accident, Taco Bell's insurance company sent Radke to a series of medical doctors who prescribed various physical treatments to relieve the soreness and pain in Radke's foot such as cortisone injections, foot wrappings, air casts, splints, orthopedic inserts, stretching exercises, weight reduction and physical therapy. None of the treatments helped Radke's condition. Radke eventually developed bilateral fascitis in her left foot, the result of overcompensating from the pain in her right foot. In June 1995, based on her medical condition, doctors restricted Radke to "a sitting job or minium walking." (Radke Dep. at 56). From September 6, 1995 through September 28, 1995, Radke took a medical leave of absence due to pain in her feet. By November 1995, Radke was restricted to walking only four to six hours a day. During the time from March 1995 through February 1996, save the 22 days in September 1995, Radke continued work at a minimum of ten hours per day, at least five days per week in between two Taco Bell restaurants despite her medical restrictions. Over the course of approximately 16 months Radke had been treated by 7 healthcare providers with no improvement in the condition of her feet.

In February 1996, Radke asked to be relieved of all responsibility for the Fox Valley Mall restaurant because both of her feet were in too much pain to tolerate. Taco Bell granted this request

2

and Radke was relieved of her duties as RGM at the Fox Valley Mall. In July 1996, Radke took another medical leave for three weeks. Upon her return Radke continued to work 10 hour shifts but was unable to do so without severe pain. On August 6, 1996, Taco Bell placed Radke on medical leave. On February 5, 1997, Radke's leave was converted into long-term disability leave. While on long-term disability leave, Taco Bell continued to pay Radke medical life insurance and stock benefits.

On March 11, 1999, Radke's workers' compensation claim stemming from her March 1995, accident went to a hearing before the Illinois Industrial Commission ("IIC"). During the hearing Radke testified that based on her medical condition she was unable to pursue her regular occupation as a RGM and instead was limited to working in a sedentary position. Radke testified that she sought out and worked full-time at Gardner Buick where she was able to sit down during the day. The IIC found that Radke's bilateral fascitis in both feet was casually related to her work-related injury of March 18, 1995. The IIC also found that Taco Bell terminated Radke on August 6, 1996, because Taco Bell could no longer reasonably accommodate Radke's work-related restrictions. The IIC concluded that Radke was temporarily and totally disabled from the period of September 6, 1995 through September 28, 1995 and deserved a sum of $466.03 per week during that period for compensation. Ultimately, the IIC awarded Radke $226.03 per week for the duration of Radke's disability, pursuant to statute and based on differential between Radke's wages at Gardner Buick and her previous wages at Taco Bell. The IIC based all of its findings on Radke's partial incapacity and complete inability to pursue her usual and customary line of employment as restaurant manager. Based on the decision of the IIC, Radke and Taco Bell settled Radke's workers' compensation claim for a lump sum payment of $103,000.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

I.  Conflict of Laws

In diversity jurisdiction, a district court applies the substantive law of the forum state, including the rules governing the choice of law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This court therefore applies the choice of law rules set forth in the Restatement (Second) of Conflicts of Law which Illinois has adopted. Ingersoll v. Klein, 46 Ill.2d 42, 262 N.E.2d 593, 595 (1970); Suzik v. Sea-Land Corp., 89

F.3d 345, 348 (7th Cir.1996). The Second Restatement requires that a court apply the substantive law of the state with the most significant relationship to the torts at issue. Id. In this case, however, no party has raised a conflict of laws issue, therefore, the governing law is that of the forum state, Illinois. Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir.1992).

II.     The Merits of the Motion for Summary Judgment

Workers' compensation systems are designed to replace income lost as the result of injury while on the job. The premise of these systems is that totally disabled persons will be removed from the payroll, partially disabled persons will land in less remunerative jobs, and workers' compensation payments will replace some of the income lost. The Illinois Workers' Compensation Act makes it unlawful for an employer to retaliate against employees for exercising their rights or remedies granted by the Act. See 820 ILCS 305/4(h). In addition, Illinois law recognizes an independent cause of action for retaliatory discharge for employees whose employment is terminated as a result of their exercise of rights to file a workers' compensation claim. See Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 357 (Ill.1978).

In order to recover under a theory of retaliatory discharge, a plaintiff must prove: (1) that she was an employee before the injury; (2) that she exercised a right granted by the Illinois Workers' Compensation Act; and (3) that she was discharged and that the discharge was causally related to her filing a claim under the Workers' Compensation Act. Borcky v. Maytag Corp., 248 F.3d 691, 695-696 (7th Cir. 2001)(quotations omitted)(citing Clemons v. Mechanical Devices Co., 184 Ill.2d 328, 235 Ill.Dec. 54, 704 N.E.2d 403, 406 (Ill.1998)). An employer can rebut a casual connection between an employee's claim and subsequent termination, if the employer has a valid basis for the termination which is not merely a pretext for retaliation. Jackson v. Bunge Corp., 40 F.3d 239, 242

5

(7th Cir. 1994)(citing Hartlein v. Illinois Power Co., 151 Ill.2d 142, 176 Ill.Dec. 22, 30, 601 N.E.2d 720, 728 (1992)(citations omitted)). As to Radke's claim of retaliation, the threshold issue on Taco Bell's motion for summary judgment is whether there exists sufficient evidence in the record from which a reasonable jury could find that there is a causal connection between Radke's termination and Radke's workers' compensation claim. It is undisputed that: (1) on March 18, 1995, Radke sustained a work-related injury while working for Taco Bell; (2) on April 2, 1999, the IIC found in favor of Radke on Radke's claim for benefits pursuant to Illinois Workers' Compensation Act;[2] and (3) on March 1, 1999, Taco Bell terminated Radke.[3]

In order to demonstrate a causal connection, a plaintiff must demonstrate that the employer would not have taken the adverse action "but for" the protected expression. See Johnson v. University of Wisconsin-Eau Claire, 70 F.3d 469, 479 (7th Cir. 1995). Upon review of Radke's voluminous submissions, the only evidence that presents even a scintilla of connection is the temporal proximity of the IIC's final decision on April 9, 1999, to that of Taco Bell's notification

---

[2] Neither side found it sufficiently important to state when Radke actually filed her claim for relief under the Act, the case number, 97 WC 5493, affixed to the IIC's April 1999 decision suggests that Radke filed her claim sometime in the latter part of 1997. In somewhat of a contradiction to the IIC docket number, however, Radke testified in her deposition, that she made her worker's compensation claim to Taco Bell by March 20, 1995.

[3] Radke alleges in the amended complaint that Taco Bell terminated Radke "on or about August 6, 1996." (Amended Compl. ¶ 3,6). On August 6, 1996, the facts of this case reveal that Taco Bell placed Radke on medical leave on absence, which was converted to long-term disability leave effective February 5, 1997. Accordingly, Radke's claim against Taco Bell for being placed on medical leave on August 6, 1999 is without merit since under Illinois law retaliatory discharge does not provide employees redress for retaliatory acts short of termination. See Zimmerman v. Buchheit of Sparta, Inc., 164 Ill.2d 29, 44, 645 N.E.2d 877, 884 (Ill.,1994)(stating we decline plaintiff's invitation to judicially create a cause of action for retaliatory demotion); Pope v. Inland Property Management Inc., 878 F.Supp. 1114, 1117 (N.D.Ill.,1995)(finding Illinois courts have expressly refused to expand the theory of retaliatory discharge beyond the element of actual termination).

to Radke on May 13, 1999, that she had been terminated effective March 1, 1999, for failure to return to work from long-term disability leave. A closer look at the evidence in this case reveals that Taco Bell terminated Radke approximately a month before the decision of the IIC and approximately four years after Radke gave Taco Bell notice of a possible workers' compensation claim on March 20, 1995. This court finds that the timing of these events are too tenuous for a reasonable inference of a casual connection be made. Based on the temporal proximity of Radke's notice, the IIC decision and Radke's termination, there is insufficient evidence such that a reasonable jury could reasonably infer that Taco Bell would not have terminated Radke but for her filing a claim. See e.g., Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1314 (7th Cir. 1989); see also Sweeney v. West, 149 F.3d 550, 557 (7th Cir.1998)(holding that in order to establish a causal connection via temporal proximity the employer's adverse action must follow fairly soon after the employee's protected conduct); Eastland v. Tennessee Valley Auth., 704 F.2d 613, 627 (11th Cir.1983) ("Evidence that the adverse treatment followed closely upon the protected activity ... may be sufficient to establish a causal connection.").

Radke argues that retaliatory animus can be inferred by Taco Bells' failure to follow its own procedures regarding employees placed on long-term disability. There is no evidence in this case, however, which establishes what procedure Taco Bell failed to follow in Radke's case. Radke also argues that retaliatory animus can be inferred from several office memorandums which circulated around the human resource department at Taco Bell while Radke's workers' compensation claim was pending. There is no evidence in the record, however, which establishes that these circulated memorandums stated untruths about Radke or otherwise sabotaged Radke's employment at Taco Bell because of her pending workers' compensation claim. Upon review of all the evidence in a light

7

most favorable to Radke and resolving all reasonable inferences in favor of Radke, Radke has failed to present sufficient evidence in the record to create a genuine issue of material fact regarding a casual connection between Radke's termination and Radke's workers' compensation claim. This court finds that based on the evidence in this case no reasonable jury could find that but for Radke's workers' compensation claim, Taco Bell would not have terminated Radke.

Even though Radke has failed to establish a prima facie case of retaliation under Illinois law, Taco Bell nonetheless offers two alternative bases for Radke's discharge, Radke's medical condition prevented her from working as a RGM for Taco Bell and Radke had found other full-time employment. Radke argues that Taco Bell's reasons for her discharge are merely a pretext because Taco Bell's requirements for the RGM position were flexible and because she believes that despite her medical condition she could have done what was necessary to meet Taco Bell's RGM standards and requirements. Radke asserts that as of June 13, 1996, Dr. Kevin Walsh was of the opinion that Radke could return to work without restriction, that Dr. Armen Kelikian on October 1996, released Radke to full-time employment with a maximum of six hours standing, and that as of January 13, 1997, a third doctor was of the opinion that Radke had reached maximum medical improvement and fully recovered from her injury.

In response, Taco Bell turns this court's attention to the IIC hearing of March 11, 1999, and argues that the IIC record supports its conclusions that Radke is physically unable to return to work as an RGM and that Radke had found other employment. In looking at the IIC hearing, Radke testified that while on leave from Taco Bell she sought employment which would allow her to sit down during the day and found such employment in July 1998, at Gardner Buick in Aurora, Illinois. Radke testified that at the time of her accident Taco Bell paid its RGM's for 40 hours of work per

8

week but that a RGM was always required to work 50 hours per week at a minimum. Radke also testified that prior to her accident she was on her feet 95% of the fifty hours minimum in managing her Taco Bell restaurants. Radke testified that in January 1996, Dr. Kelikian advised her to pursue a new career other than a RGM at Taco Bell, and that the Dr. Kelikian advised her that her foot condition was not going to get better until she stayed off her feet. Radke testified that during the time after her accident but before Taco Bell placed her leave in August 1996, her time working as a RGM did not improve her foot condition, but in fact made her condition worse.

Radke's testimony before the IIC is treated as an admission by a party-opponent in this case. It is well-established in this circuit that the pleadings in one proceeding are admissible and cognizable as an admission in another. Walaschek & Associates, Inc. v. Crow, 733 F.2d 51, 54 (7th Cir. 1984)(citation omitted). Radke's admissions, however, are not entirely conclusive to the truth of matters stated in Radke's testimony. Radke's admissions under Federal Rule of Evidence 801(d)(2) can be overcome by competent evidence offered in opposition. In review of the record in this case, however, Radke has failed to adduce competent evidence which rebuts her previous testimony. In an attempt to rebut her testimony, Radke asserts that Taco Bell has no written stand/walk requirement for RGM and also asserts that she is able to perform the essential functions of her job as demonstrated between the time she had her accident and the time she was placed on medical leave of accident. Radke relies on her own affidavit and the opinion of Dr. Walsh in support of these propositions. This court finds that Radke's affidavit is self-serving and in direct contradiction to her previous testimony before the IIC and also finds that Dr. Walsh's medical opinion is insufficient to overcome Radke's admissions, before the IIC, that she is unable to perform the duties of a RGM and that she ultimately found alternative employment commensurate with her

limited physical abilities.

Finally as to Radke's subjective beliefs that she is able to perform the necessary tasks of a RGM, these subjective beliefs are irrelevant in demonstrating that Taco Bell's proffered reasons for Radke's termination are pretextual. Pretext is more than a mistake, misinformation, or a bad decision on the part of the employer; pretext means a lie, specifically a phony reason for some action. See Richter v. Hook-SupeRx, Inc., 142 F.3d 1024, 1029-30 (7th Cir.1998)(citations omitted). Thus, "[t]he issue of pretext does not address the correctness or desirability of [the] reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." Id. at 1029. Accordingly, Radke's subjective beliefs of her abilities are irrelevant as to pretext because Radke's beliefs do not address whether Taco Bell actually believed and relied upon medical recommendations and Radke's own testimony that stated that Radke was unable to work as a RGM.

Furthermore, Taco Bell's primary reason for Radke's termination, Radke's physical disability, is consistent with Illinois law. Illinois law does not require employers to retain persons who cannot work. McEwen v. Delta Air Lines, Inc., 919 F.2d 58, 60 (7th Cir.1990). When an injured person cannot work at all, an employer may discharge that employee, Illinois allows employers to act on the basis of their employees' physical disabilities. Id. at 60 -61. Radke has not cited any case holding that employers must retain totally disabled workers, or even that an employer must offer injured persons alternative employment commensurate with their reduced capabilities. Accordingly under McEwen, Taco Bell is not otherwise liable in deciding to terminate Radke based on her physical limitations. Upon review of the all the evidence in this case, Radke has failed to present sufficient evidence such that a reasonable jury could find that she was completely healthy

to carry on her duties as a RGM for Taco Bell and has failed to present sufficient evidence to create a genuine issue of material fact that Taco Bells proffered reasons for Radke's discharge are pretextual. Having already found that Radke has failed to create a genuine issue of fact regarding a prima facie case of retaliation, summary judgment in favor of Taco Bell is necessary as a matter of law.

## CONCLUSION

For the above stated reasons, the defendant's motion for summary judgment is GRANTED. This case is dismissed in its entirety with prejudice. All pending motions are moot. All previously scheduled dates are stricken.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: March 21, 2002

11